UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.N., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION - LAW |
| | : | |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| MARK ICKER, and | : | |
| ASHLEY BOROUGH | : | |
| | : | No. 3:19-CV-02016-JMM |
| Defendants. | : | |

AMENDED COMPLAINT

Plaintiff A.N., by her attorneys, Barry H. Dyller, Esq., Theron J. Solomon, Esq. and the Dyller Law Firm, for her Amended Complaint alleges as follows:

JURISDICTION AND VENUE

1. This action arises out of violations of 42 U.S.C. § 1983, and the common law.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because all defendants reside in this State and some of the defendants reside in this judicial district, and because a substantial part

of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PARTIES

3. At all times relevant hereto, Plaintiff was a resident of Luzerne County, Pennsylvania. Plaintiff is female. Due to the sensitive nature of the events described below, which include a sexual assault, and the notoriety of such events, Plaintiff is not identifying her actual name in this Complaint, but is instead using a pseudonym. However, defendant is aware of her name, and Plaintiff will provide defendant with any other appropriate identifying information.

4. At all times relevant hereto, defendant Mark Icker ("Icker") was a police officer employed by the Ashley Borough Police Department, as well as by other police departments.

5. Icker is a resident of the Commonwealth of Pennsylvania.

5A. Defendant Ashley Borough is a borough in Luzerne County, Pennsylvania.

## THE INCIDENT

6. On June 18, 2018, A.N. was at a party at a bar called Risnicks. She left the bar around 1:00 a.m. and traveled home toward Mountaintop.

7. Defendant Icker, was on duty at that time. Icker pulled over A.N. on Route 309, which was in the jurisdiction of the Ashley Borough Police.

8. Defendant Icker was the sole officer on duty that evening for Ashley Borough.

9. Icker pulled A.N. over for allegedly speeding. Icker approached A.N.'s vehicle, asked for her license and registration, and asked her to then step out of the vehicle so he could search her car.

10. Without probable cause or constitutional authority, Icker searched A.N.'s car.

11. The reason for the unconstitutional search was to attempt to find drugs or any contraband he could use to threaten A.N. and use to scare her into complying with sexual demands.

12. Having not found any illegal substance, Icker then, on the side of the road, gave A.N. a breathalyzer. A.N. allegedly failed the breathalyzer.

13. Icker then called a female officer from Wilkes-Barre Township to come to the scene to search A.N. before he took her into custody.

14. After the search, Icker sent the female officer away, put A.N. in the back of his car and took her to the Geisinger Medical Center for a blood draw.

15. While on this ride with A.N., Icker asked A.N. if he should get in touch with her husband or boyfriend.

16. Icker took A.N. to the hospital, had her blood drawn and stayed there and waited with her. When A.N. was finished with the blood draw, Icker asked her again if he should call her boyfriend or husband to come to pick her up. A.N. indicated that she did not have a boyfriend and would try to find a way home. Icker then insisted on giving A.N. a ride home and said it was not a problem. Icker put A.N. in the back of his police car and drove outside of his jurisdiction to A.N.'s home to Mountaintop.

17. On that ride, Icker continuously talked about A.N. not having a boyfriend or husband.

18. On that ride, Icker made multiple comments about A.N.'s tattoos.

19. Icker asked A.N. several times whether she had any piercings, and whether she had any piercings "down there."

20. Upon arriving at A.N.'s home, Icker asked A.N. if he could use her bathroom.  A.N. allowed Icker to use her bathroom.

21. Icker took A.N.'s cell phone from her and left it in his police vehicle outside of the home.

22. Icker went into A.N.'s house and used the restroom.

23. Icker then refused to leave.  He began pacing around A.N.'s home, and would not leave.

24. A.N. was alone in her home with Icker, who refused to leave. A.N. did not have her phone to call for help.

25. Icker stayed in the house for several hours, pacing around and asking A.N. personal questions.  Icker continued to ask A.N. about piercings and her tattoos.

26. A.N. had a V-cut shirt on that revealed the top of a chest tattoo. Icker approached A.N. and asked to see the rest of the tattoo.

27. A.N. pulled her shirt down slightly to show him the tattoo.  Icker then pulled her shirt down the rest of the way and commented on A.N.'s breasts.

28. Icker then stated that he wondered how A.N.'s breasts taste.

29. Icker then grabbed A.N. by her waist and abdomen, and fondled her up onto her breasts in a cupping motion, squeezing her breasts. Icker did all of this without A.N.'s consent and against her will.

30. A.N. was terrified. She had no idea what to do or how to get this armed police officer out of her home and to stop him from sexually assaulting her.

31. Icker made A.N. give him her phone number.

32. Before leaving, Icker repeatedly told A.N. that she would have to go out on a date with him. Icker asked A.N. to go for breakfast that morning. A.N. declined and asked him politely to leave.

33. After A.N. finally got Icker to leave the home, he began texting her. He texted her several times in the next few days, and the texts did not stop until shortly before Icker was arrested for the rape of a different woman.

34. Icker continued to tell A.N. that she needed to help herself if she did not want him to file the charges against her.

35. It was obvious to A.N. that Icker was holding a criminal charge over her head if she refused to have sex with him.

36. Several other women have come forward and related similar incidents, including that Icker forced them to perform sex acts on him in order to avoid criminal charges.

37. A.N.'s belief that Icker was holding a criminal charge over her head to force her to engage in sex with him was correct, as the experiences and reports of the other victims reveals that that was Icker's *modus operandi.*

38. Icker repeatedly told A.N. that she was looking at jail time for the driving under the influence charge.

39. Icker became increasingly aggressive with his text messages when A.N. refused to meet with him.  Icker continued to text A.N., threatening her that he had two years for a statute of limitations to file charges against her.

40. A.N. was terrified.  Not only was this police officer threatening to file criminal charges against her, but he also knew where she lived and was increasingly aggressive toward her when she refused his advances.

41. A.N. already knew that Icker had refused to leave her home, had pulled her shirt down, commented on and grabbed her breasts, all without consent and when he held power over her.  A.N. was so scared

that she moved back in with her mother and stopped staying at her own house.  A.N. was terrified that Icker would come back to her home and attack her again or possibly even worse, because she was declining his advances via text message.

42. As a result of Icker's actions as described above, A.N. suffered significant injuries and damages.

*Ashley Borough's Policies and Customs*

42A. Upon information and belief, pursuant to its policy, practice or custom, Ashley Borough never attempted to supervise Icker to learn his on-duty activities.

42B. Consistent with that policy, custom or practice, Ashley Borough never learned that Icker was outside of his jurisdiction, and therefore never attempted to determine what he was doing or with whom he was interacting.

42C. Upon information and belief, Icker learned from this incident and others, that Ashley Borough's policy, practice and custom was to afford him complete autonomy.  This gave him the confidence to sexually assault and terrorize A.N. and other women subsequently.

42D. Upon information and belief, Ashley Borough chose not to adequately supervise its officers, or the arrests and traffic stops they make.

42E. Upon information and belief, Ashley Borough has chosen to allow its officers to self-police and supervise themselves and rely on an "honesty policy" of self-reporting by officers who violate the rights of those they have sworn to protect.

COUNT ONE
(42 U.S.C. § 1983)

43.   Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

44.   Icker's search of Plaintiff's vehicle was without consent and without probable cause.

45.   Icker's conduct therefore was a deprivation, under color of state law, of rights guaranteed to Plaintiff under the Fourth and Fourteenth Amendment to the United States Constitution.

46.   As a result of Icker's violations of Plaintiff's Constitutional rights, Plaintiff suffered injuries and damage.

## COUNT TWO
## (42 U.S.C. § 1983)

47. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

48. Icker's conduct in touching and grabbing A.N.'s breasts and other parts of her body constituted an unreasonable seizure, and an intrusion on A.N.'s bodily integrity, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

49. As a result of Icker's violations of Plaintiff's Constitutional rights, Plaintiff suffered injuries and damage.

## COUNT THREE
## (42 U.S.C. § 1983)

50. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

51. Icker caused harm to A.N. which was foreseeable and fairly direct.

52. Icker acted with a degree of culpability that shocks the conscience.

53. The relationship between Icker and A.N. – police officer and detainee -- was such that A.N. was a foreseeable

victim of the Icker's acts, as opposed to a member of the public in general.

54. Icker affirmatively used his authority in a way that created a danger to the A.N. or that rendered A.N. more vulnerable to danger than had Icker not acted at all.

55. Icker's conduct therefore was a deprivation, under color of state law, of rights guaranteed to A.N. under the Fourteenth Amendment to the United States Constitution.

56. As a result of Icker's violations of A.N.'s Constitutional rights, A.N. suffered injuries and damage.

## COUNT FOUR
(42 U.S.C. § 1983)

57. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

58. Icker's detention of A.N. and continuing seizure and detention of A.N. in her home without any legitimate purpose was an unreasonable seizure of her person and an unreasonable intrusion into the privacy of A.N.'s home.

59. Icker's conduct therefore was a deprivation, under color of state law, of rights guaranteed to A.N. under the Fourth and Fourteenth Amendment to the United States Constitution.

60. As a result of Icker's violations of A.N.'s Constitutional rights, A.N. suffered injuries and damage.

## COUNT FIVE
(Assault)

61. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

62. Icker intended to put Plaintiff in reasonable and immediate apprehension of a harmful or offensive contact with her body.

63. As a result of Icker's actions, Plaintiff was put in reasonable and immediate apprehension of such contact.

## COUNT SIX
(Battery)

64. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

65. Defendant Icker committed the acts described above with the intent to cause a harmful or offensive contact with Plaintiff's body and/or

with the intent to put Plaintiff in reasonable and immediate apprehension of a harmful or offensive contact with her body.

66. Icker's actions directly and indirectly resulted in a harmful and/or offensive contact with Plaintiff's body.

## COUNT SEVEN
### (Intentional Infliction of Emotional Distress)

67. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

68. Icker, by his extreme and outrageous conduct, intentionally or recklessly caused Plaintiff to suffer severe emotional distress and bodily harm.

## COUNT EIGHT
### (Trespass)

69. Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

70. Icker entered A.N.'s home with limited consent to use the bathroom.

71. After using the bathroom, Icker remained in A.N.'s home without consent or privilege to do so.

72. As a result of Icker's trespass, the plaintiff suffered substantial injuries and/or damages.

## COUNT NINE
## 42 U.S.C. §1983
## A.N. v. Ashley Borough

73. A.N. repeats and realleges each and every allegation contained above as if fully repeated herein.

74. Ashley Borough was deliberately indifferent to Icker's misconduct, and accepted the obvious consequences of its failure to properly supervise or discipline him or other police officers.

75. By failing to supervise Icker and monitor any of his activities while on duty to serve and protect the citizens of Ashley Borough, Ashley Borough created a policy, practice or custom that its officers were not supervised and were free to do whatever they please, including rape and assault women in the community.

76. Ashley Borough engaged in a pattern or continued adherence to an approach that it knew or should know that would fail to prevent Icker or any other officer's misconduct.

77. As a result of Ashley Borough's deliberate indifference to supervising or monitoring its police officers, A.N. suffered severe damages.

WHEREFORE, Plaintiff demands judgment as follows:

A.     For Count One, an amount to be determined at trial, including punitive damages, plus interest;

B.     For Count Two, an amount to be determined at trial, including punitive damages, plus interest;

C.     For Count Three, an amount to be determined at trial, including punitive damages, plus interest;

D.     For Count Four, an amount to be determined at trial, including punitive damages, plus interest;

E.     For Count Five, an amount to be determined at trial, including punitive damages, plus interest;

F.     For Count Six, an amount to be determined at trial, including punitive damages, plus interest;

G.     For Count Seven, an amount to be determined at trial, including punitive damages, plus interest;

H.     For Count Eight, an amount to be determined at trial, including punitive damages, plus interest;

    I.    For Count Nine, an amount to be determined at trial, plus interest;

    J.    For plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

    K.    For the costs and disbursements incurred in this action; and

    L.    For such other and further relief as the Court deems just and proper.

> DYLLER LAW FIRM
>
> /s/ Barry H. Dyller
> /s/ Theron J. Solomon
> Attorneys for Plaintiff
> Gettysburg House
> 88 North Franklin Street
> Wilkes-Barre, PA   18701
> (570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.